UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 08-230-JBC

BAMBI DAVIS,                                                                                    PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

MICHAEL ASTRUE,
SOCIAL SECURITY ADMINISTRATION,                                       DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Bambi Davis's appeal of the Commissioner's denial of her application for disability insurance benefits ("DIB") and supplemental social security income ("SSI") (R. 10, 11). The court will deny Davis's motion and grant the Commissioner's motion.

I.      Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the relevant legal standards were properly applied. *See Brainard v. Sec'y of Health & Human Servs*., 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs*., 25

F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *Ibid.*  Rather, the ALJ's decision must be affirmed if it is reasonably supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II.     The ALJ's Determination**

At the time of the alleged disability onset date, Davis was a thirty-nine-year-old female.  *See* AR 24.  She alleges disability beginning on January 15, 2005, due

to a variety of physical impairments.  *See* AR 24.  Davis filed claims for DIB and SSI on April 13, 2005.  *See* AR 21.  The claims were denied initially on August 19, 2005, and again upon reconsideration on January 24, 2006.  *Ibid*.  After a hearing on May 15, 2007, Administrative Law Judge ("ALJ") James D. Kemper determined that Davis did not suffer from a disability as defined by the Social Security Act.  *See* AR 37.

At Step 1, while the ALJ noted that Davis had apparently engaged in some work activity after January 15, 2005, that she did not disclose, he found that Davis had not engaged in substantial gainful activity since the alleged disability onset date.  *See* AR 24.  He proceeded with the remaining steps of the sequential evaluation, explaining that even if her claim survives Step 1 of the analysis, "she would still be found not disabled at step [5] of the sequential evaluation process."  *See* AR 24.

At Step 2, the ALJ found that Davis has severe impairments due to chronic back pain, obesity, anxiety, and depression.  *See* AR 24-27.  At Step 3, the ALJ determined that Davis does not have impairments or a combination of impairments that meet or medically equal a listing in the Listing of Impairments in the Code of Federal Regulations.  *See* AR 27-29.

In assessing Davis's claim at Steps 4 and 5, the ALJ found that she has a residual function capacity ("RFC") to perform medium work.  He accepted the limitations of Dennis Sprague, Ph.D., finding that she is limited to simple,

low-stress, task-oriented activities, with very little contact with members of the public, co-workers, and supervisors. *See* AR 29-36. At Step 4, the ALJ found Davis unable to perform her past relevant work as a certified nursing assistant and cook. *See* AR 36. Finally, at Step 5, the ALJ determined that due to the her age, education, work experience, and RFC, jobs exists in significant numbers in the national economy that she can perform. *See* AR 36-37. The Appeals Council denied her request for review on November 20, 2008, and she commenced this action. *See* AR 6; R. 2.

**III.    Analysis**

Davis claims to have been disabled since January 15, 2005, yet a review of questionnaires reveals that she performed work after this date. There is evidence that she worked as a cake decorator, and that on October 27, 2005, she was dismissed because she was unable to "keep up with the work." *See* AR 117. It appears that Davis performed work at other jobs – her 2005 earnings, totaling $3,659.45, were the result of work from four different businesses, all of which she failed to disclose in her Work Activity Report. *See* AR 93. Also, mental health treatment records show that seven months after she purportedly became unable to work, she was actively looking for employment and had scheduled an interview for a job at Wal-Mart. *See* AR 300. As noted by the ALJ, her efforts in seeking employment suggest that at times after the onset of her alleged disability, even she believed she was capable of engaging in work. Regardless of problems with

Davis's claims at Step 1 of the sequential evaluation, she focuses her challenge of the ALJ's findings at Step 5 with three arguments.

First, Davis contends that the hypothetical question posed to the vocational expert ("VE"), D. Joe Woolwine, was flawed. However, the question included relevant information pertaining to her background, exertional limitations, and non-exertional limitations, including those that the ALJ included in his determination of her RFC.[1] *See* AR 150. The ALJ also accepted Dr. Sprague's medical assessment that Davis has a "fair" ability, defined as "limited but satisfactory," to follow work rules; relate to co-workers; deal with the public; interact with supervisors; maintain attention/concentration; understand, remember, and carry out simple job instructions; maintain personal appearance; behave in an emotionally stable manner; and relate predictably in social situations. *See* AR 29, 470-475. Responding to the hypothetical question, the VE answered by letter that someone with Davis's vocational profile could perform work such as a janitor, hand-packer, equipment cleaner, product inspector, product assembler, or machine tender. *See* AR 149. "An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record," *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922 (6th Cir. 1987), and the ALJ properly relied on the VE's

---

[1] "She has a 'poor' ability (seriously limited but not precluded) to use judgment, deal with work stress, function independently, and understand, remember, and carry out complex job instructions. She has a 'fair' ability (limited, but satisfactory) in all other functional areas. She retains the capacity to perform simple, low stress, task oriented activities, with very little contact with members of the general public, coworkers, and supervisors." *See* AR 29, 150.

answers in this regard.

Second, Davis contends that the findings of the VE showing that a significant number of available jobs exist for her to perform, despite her impairments, were nothing more than "a heartfelt guess." She argues that the VE's submission of the number of jobs available regionally as uniformly 10%, by category, of the number of jobs available nationally, by category, is incorrect on its face, so that all of the VE's testimony must be called into question. *See* AR 149. However, the ALJ had no duty to independently investigate the numbers submitted by the VE to determine whether they were correct. *See Hardaway,* 823 F.2d at 298 (stating that the burden to demonstrate the existence of jobs that the claimant can perform was met when the VE testified that there were jobs available that the claimant could perform); *cf. Martin v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to decide if they are correct."). Regardless, the relevant inquiry is "whether work exists in the national economy, not in [the] plaintiff's neighborhood." *See Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). The ALJ did not improperly adopt the VE's findings in determining that Davis retained the ability to perform a significant number of available jobs located in the national economy.

Finally, Davis argues that the VE did not specify whether the number of

available jobs in the national economy that she could perform were of full-time duration. Yet, the VE's findings were based on an RFC that is a person's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.). A "regular and continuing basis" is eight hours per day and five days per week, or the equivalent work schedule. *Ibid.* Since Davis's RFC accounted for her ability to perform full-time work, there was no reason for the ALJ to inquire further as to why the VE did not describe jobs as full-time or part-time in his response. Davis's argument that the VE's failure to describe available jobs in the national economy as full-time, as well as her arguments that the hypothetical posed to the VE was flawed and the VE's testimony was "a heartfelt guess" do not show that the ALJ's decision was unsupported by significant evidence or that the ALJ misapplied the law.

## IV. Conclusion

**IT IS ORDERED** that the ALJ's decision to deny benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (R. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 10) is **DENIED**.

Signed on  January 5, 2010

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY